**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-60185
_____

FRANK TANNER, Individually; and as Father and
Next Best Friend of Jennifer Renee Tanner, Minor;
DAISY TANNER, Individually;
JENNIFER RENEE TANNER, Minor,                    Plaintiffs - Appellants,

verses

H. WADE WESTBROOK, MD; ET AL,

                                                 Defendants,

BAPTIST MEMORIAL HOSPITAL - DESOTO INC.,
a Delaware Corporation,                          Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi

(3:95-CV-118-B)

_____

March 25, 2002

Before POLITZ, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    Frank, Daisy, and Jennifer Tanner (the "Tanners") appeal the jury's verdict in favor of Baptist

Memorial Hospital ("BMH") on the Tanners claim for medical malpractice.  For the following

[*]Pursuant to CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstance set forth in 5th CIR. R. 47.5.4.

reasons, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The Tanners filed suit against Dr. Wade Westbrook ("Westbrook"), Dr. Manoj Narayanan ("Narayanan"), and BMH for medical malpractice. Frank and Daisy Tanner allege that the defendants were negligent in the treatment of their daughter, Jennifer Tanner ("Jennifer"), and that the defendants' negligence proximately caused or contributed to her resulting cerebral palsy. The facts giving rise to this case are detailed in Tanner v. Westbrook, 174 F.3d 542 (5th Cir. 1999). At trial, both sides provided conflicting theories regarding the cause of Jennifer's cerebral palsy and whether the defendants could have done more to prevent it. The jury, assigning liability to BMH and Westbrook equally, but exonerating Narayanan, returned a verdict of $3,000,000 in favor of Jennifer and $100,000 in favor of each parent. BMH and Westbrook appealed. While the appeal was pending, Westbrook settled with the Tanners and his appeal was dismissed. On appeal, we found that the district court abused its discretion in admitting Dr. Richard Nestrud's ("Nestrud") testimony because the record lacked support for the reliability of Nestrud's opinion that birth asphyxia was more likely than not the cause of Jennifer's cerebral palsy. Accordingly, we vacated the verdict and remanded the case for a new trial.

On remand, the Tanners designated Nestrud and two additional medical experts: Dr. Dale Alverson and Dr. Arthur L. Prensky, to testify as to the cause of Jennifer's cerebral palsy. BMH presented three additional medical experts: Dr. Michael Johnston ("Johnston"), Dr. Jay Goldsmith ("Goldsmith"), and Dr. Kenneth Perry ("Perry"). The Tanners filed a motion to strike the testimony of Goldsmith and Johnston, arguing that their testimony was not scientifically reliable as required by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Specifically, the Tanners

2

challenged that the experts' opinions that (1) Jennifer's asphyxia and brain damage occurred well before birth, (2) metabolic acidosis does not cause or exacerbate brain damage, and (3) the lab results indicating that Jennifer was significantly acidotic at one and half hours after birth were erroneous. The Tanners also filed a motion in limine seeking to exclude any evidence or argument suggesting that Narayanan was negligent, on the grounds that he was found not negligent in the first trial. The Tanners further sought to exclude any evidence or testimony suggesting that Westbrook was negligent, arguing that BMH had not presented any evidence regarding negligence on the part of Westbrook. In response to the Tanners' motion to strike, BMH stated that its experts were qualified and that the Tanners' objections were not proper Daubert objections. BMH also filed a Daubert motion to strike the testimony of the Tanners' medical experts.

The second trial began on July 31, 2000. Prior to any testimony, the district court heard arguments on the pending motions. The court denied BMH's Daubert motion and requested that the Tanners renew their motion to strike during trial. With regard to the Tanners' motion in limine, the district court determined that BMH could use the Tanners' original complaint as proof of negligence on the part of Narayanan and Westbrook. The court stated that it would instruct the jury that Narayanan and Westbrook had once been, but were no longer, defendants in the case. At this time, the Tanners requested that the court also explain to the jury that Narayanan was dismissed and that Westbrook settled. The district court, however, did not give the jury any such explanation. During trial, the Tanners renewed their motion to strike, which the district court denied. On August 7, 2000, the jury returned a verdict in favor of BMH. The next day, the Tanners filed a motion for judgment as a matter of law, or alternatively, a new trial. The motion was denied and the Tanners appealed. BMH filed a cross-appeal, but later filed a motion to dismiss the appeal, which was granted.

3

STANDARD OF REVIEW

A district court's evidentiary decisions are reviewed for abuse of discretion. <u>United States v. Cantu</u>, 167 F.3d 198, 203 (5th Cir. 1999). We also review challenges to the district court's jury instructions for abuse of discretion. <u>McCoy v. Hernandez</u>, 203 F.3d 371, 375 (5th Cir. 2000). "Review of factual findings underlying a jury verdict is deferential: 'unless evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict, findings of the jury must be upheld.'" <u>Waco Intern., Inc. v. KHK Scaffolding Houston, Inc.</u>, 278 F.3d 523, 528 (5th Cir. 2002) (citation omitted).

DISCUSSION

To establish a prima facie case of medical malpractice, a plaintiff, upon demonstrating a physician-patient relationship and its attendant duty, is normally required to submit expert testimony "identifying and articulating the requisite standard of care and establishing that the defendant physician failed to conform to the standard of care." <u>Thompson v. Carter</u>, 518 So. 2d 609, 611 (Miss. 1987) (citation omitted). The plaintiff must also prove that the physician's failure to comply with the applicable standard of care caused the plaintiff's injury and the extent of any damages. <u>Id.</u> In medical malpractice cases, frequently the plaintiff has already suffered an adverse condition, the condition that requires her to be in the hospital in the first place. Thus, under Mississippi law, a defendant in such cases cannot be liable for the original medical injury, but he may be liable for the substantial improvement that treatment under due care would have provided. See <u>Harris v. Shields</u>, 568 So. 2d 269, 274 (Miss. 1990).

I.     Experts

The Tanners argue that the medical testimony offered by them established that the delay in

4

treatment of Jennifer's asphyxia and related untreated acidosis caused her injury and that, had she been treated properly and timely, it could have been prevented. They maintain that these scientifically reliable opinions by the Tanners' expert witnesses prove that Jennifer would have suffered less damage and had a significantly better outcome if BMH would not have been negligent.

In addition, the Tanners argue that the district court erred in allowing BMH's expert witnesses to testify in Daubert. In Daubert, the Supreme Court held that the Federal Rules of Evidence provide the standard for admitting expert scientific testimony and require that such testimony must be both relevant and reliable. 509 U.S. 579 (1993). The Court explained that "in order to qualify as 'scientific knowledge' an inference or assertion must be derived from the scientific method. Proposed testimony must be supported by appropriate validation--i.e., 'good grounds,' based on what is known." Id. at 590. In determining the admissibility of expert scientific testimony, the district court must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93. The Court also identified several factors that may be included in this inquiry, but emphasized that the inquiry is "a flexible one." Id. at 594. These factors include whether the theory or technique can be and has been tested, has been subject to peer review and publication, has a known potential error rate, and is generally accepted by the scientific community. Id. at 593-94.

The crux of the Tanners' Daubert argument is that BMH failed to produce any articles or texts which support the opinions offered by Doctors Goldsmith, Johnston, and Perry. They contend that the district court abused its discretion by not seriously considering the Tanners' Daubert motion to strike and failing to require BMH to articulate the basis for its experts' opinions. They argue that

the admission of such testimony severely prejudiced their substantial rights, thereby entitling them to a new trial. The Tanners further assert that the district court improperly permitted Goldsmith and Johnston to testify regarding the appropriate standard of care for labor and delivery room nurses, even though the physicians had no expertise with regard to obstetrical nursing and fetal heart monitoring.

After careful consideration of the record, we find that there are numerous articles and texts referenced by BMH supporting its medical experts testimony.[1] We therefore find that the district court properly ruled that each of BMH's medical experts met the requirements of Daubert. Further, both Doctors Goldsmith and Johnston have practiced medicine in coordination with nurses in relevant ways their entire careers, and thus, the district court did not abuse its discretion in allowing the physicians to testify to what is considered appropriate performance in the field of nursing. See Cooper v. Eagle River Memorial Hosp., Inc., 270 F.3d 456, 463 (7th Cir. 2001).

The jury could have reasonably concluded that, based on the evidence presented, the Tanners failed to establish a causal connection between BMH's treatment of Jennifer and her resulting cerebral palsy. Thus, the jury's verdict must be upheld and the Tanners are not entitled to a new trial.

II.     Other Evidence

In the district court, the Tanners filed a motion in limine seeking to exclude any evidence or

---

[1]See BMH's Response to Motion for Summary Judgment Appendix, Exhibits 13(a), JOSEPH J. VOLPE, M.D., NEUROLOGY OF THE NEWBORN 279-313 (3d ed. 1987); 13(b), BRIAN A. LUPTON et al., AM. ACAD. OF PEDIATRICS, BRAIN SWELLING IN THE ASPHYXIATED TERM NEWBORN: PATHOGENSIS AND OUTCOME, 82 PEDIATRICS 2 (1988); 16(d), Jeffrey Phelan et al., Nucleated Red Blood Cells: A Marker for Fetal Asphyxia?, 173 Am. J. Obstet. Gynecol. 1380 (1995); and D-25, JAY P. GOLDSMITH, M.D. & EDWARD H. KAROTKIN, M.D., ASSISTED VENTILATION OF THE NEONATE 257-71 (3d. ed. 1995). In addition, during discovery, BMH submitted disclosure statements that contained information relied on by its experts.

argument suggesting that Narayanan and Westbrook were negligent. The district court denied the motion, finding that BMH could use the Tanners' original complaint as proof of alleged negligence on the part of Narayanan and Westbrook. The district court also informed the parties that it was going to instruct the jury that Narayanan and Westbrook had once been defendants, but "no longer were part of the case." At this time, the Tanners requested that the court explain to the jury that Narayanan had been dismissed based on a prior jury verdict and Westbrook settled. The district court denied the request.

The Tanners argue that the district court abused its discretion in admitting into evidence the Tanners' original complaint, which contained claims against Narayanan and Westbrook. Contrary to the district court's determination, the Tanners assert that the complaint was not evidence of the physicians' negligence. Further, they maintain that the district court's failure to clarify the jury instructions prejudiced them because it is possible that the jury concluded that the physicians were no longer defendants because the Tanners claims were without merit, and therefore, their allegations against BMH must also have been meritless. Thus, the Tanners conclude that the district court abused its discretion by denying their requested instruction.

After reviewing the Tanners' specific allegations, the district court's rulings, and the applicable law, we find no such abuse of discretion. See Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 602 (5th Cir. 2000) ("We review a district court's decision to admit or to exclude evidence under the abuse of discretion standard. Thus, we will not reverse a district court's evidentiary rulings unless substantial prejudice results to the complaining party."). The Tanners argument is based on unsupported speculation. Accordingly, the district court's evidentiary rulings are affirmed.

CONCLUSION

7

For the reasons stated herein, we affirm the jury's verdict in favor of BMH.

AFFIRMED.